IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| MICHAEL JACKSON, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | No. 07-3257 |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

OPINION

JEANNE E. SCOTT, U.S. District Judge:

This matter comes before the Court on Petitioner Michael Jackson's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (d/e 1) (Petition), and his First Amended Motion to Vacate Pursuant to 28 U.S.C. § 2255 (d/e 9). On March 10, 2006, Jackson pleaded guilty to two counts of Distribution of Cocaine Base ("crack"). On September 25, 2006, Jackson was sentenced to 150 months on each count, to be served concurrently. See U.S. v. Jackson, Case No. 05-30067, Opinion entered September 27, 2006 (d/e 23) (Sentencing Opinion), at 1. Jackson now asks this Court to vacate his conviction and sentence because his counsel was ineffective. Jackson fails to present any

1

evidence of ineffective assistance. The Motion and First Amended Motion are DENIED.

## STATEMENT OF FACTS

On July 7, 2005, a criminal complaint was filed charging Jackson with distribution of crack. On July 14, 2005, Jackson was arrested and attorney Douglas Quivey was appointed to represent him. On July 21, 2005, attorney Quivey moved for a competency examination. On July 25, 2005, the Court granted the request. See Case No. 05-30067 Docket entries July 7, 2005 through July 25, 2005. On October 3, 2005, Jackson was transferred to the Bureau of Prison (BOP) facility in Chicago, Illinois, for the competency examination. Forensic Competency Report dated November 30, 2005 (Case No. 05-30067 d/e 12)(Competency Report), attached Cover Letter dated December 2, 2005.

The BOP psychologist, Jason Dana, Psy. D., prepared the Competency Report. Dr. Dana reviewed medical records from Pekin Federal Correctional Institution (Pekin FCI) where Jackson had been imprisoned on other charges in 2004. Those records revealed that Jackson had received psychiatric medications in 1995 for depression with psychotic features. The records also showed that he was prescribed medications by the psychiatrist

2

at Pekin FCI. While he was incarcerated on this charge in 2005, before he was transferred to the BOP facility for evaluation, Jackson was prescribed Prozac in response to Jackson's self-report of depression. Dr. Dana was unable to secure medical records of psychiatric treatment prior to Jackson's incarceration at Pekin FCI. Competency Report, at 3-4.

Dr. Dana and the BOP staff conducted extensive testing of Jackson during the course of his competency evaluation. Based on the testing, Dr. Dana concluded that Jackson's mental health prognosis was fair. Dr. Dana found that Jackson did not have any significant mental illness that would require immediate psychological or psychiatric intervention. Dr. Dana concluded:

> While the defendant has reported severe psychological symptomatology, there is no credible evidence to substantiate his self-report, and all historical reports of functional difficulty are attributable to substance dependence issues. The defendant was informed of the potential ramifications of malingering mental illness. However, he appears to have been intent on presenting himself as severely impaired. It is believed that he will continue to engage in behaviors he believes are indicative of psychiatric illness, until such time as it no longer serves his desired goal.

Id., at 13-14. The Court conducted a competency hearing for Jackson on December 8, 2005. At that time, the Court found Jackson to be competent.

On March 10, 2006, Jackson entered an open plea of guilty to both counts.

Prior to sentencing, Jackson told attorney Quivey of his long-standing history of mental illness. Attorney Quivey told Jackson it would be possible to obtain a downward departure in Jackson's sentence based on mental illness. Jackson directed attorney Quivey to contact Jackson's mother and fiancé Kimberly Stewart (now Kimberly Jackson) to obtain the necessary information to secure Jackson's mental health treatment records. <u>Compendium of Exhibits in Support of 28 U.S.C. § 2255 Motion (d/e 11) (Jackson Exhibits), Exhibit 1, Affidavit of Michael Jackson (Jackson Affidavit)</u>, ¶ 2. Stewart spoke to attorney Quivey about Jackson's mental health. She provided attorney Quivey with information about Jackson's past treatment for mental illness. <u>Jackson Exhibits</u>, Exhibit 2, <u>Affidavit of Kimberly Jackson (Kimberly Jackson Affidavit)</u>, ¶ 2. She ultimately secured a copy of the records and provided them to attorney Quivey. <u>Jackson Affidavit</u>, ¶ 3; <u>Kimberly Jackson Affidavit</u>, ¶ 2. Attorney Quivey agreed to raise his mental health as a basis for a downward departure in his sentence.

The medical records were provided to the U.S. Probation Office. The Probation Office summarized this information in Jackson's Presentence Investigation Report (PSR). <u>PSR, (Case No. 05-30067, d/e 26)</u>, ¶¶ 108-12.

4

Jackson started receiving mental health treatment on January 26, 1995. On that date he was seen at the Morgan-Scott Mental Health Center in Jacksonville, Illinois, following complaints of suicidal ideation. On February 17 1995, he was diagnosed with depressive disorder as well as polysubstance abuse. On March 9, 1995, he received a complete psychiatric evaluation at the Community Counseling Service in Jacksonville, Illinois. At that time, Jackson was diagnosed with polysubstance dependence, chronic and severe, in partial remission. The evaluator also noted that Jackson appeared to have chronic psychosis, possible schizoaffective disorder, and depression. PSR, ¶ 109.

On March 19, 2002, Jackson completed a comprehensive assessment at the Morgan-Scott Mental Health Center. Jackson was diagnosed with schizoaffective disorder, polysubstance abuse, and antisocial personality disorder. On June 13, 2002, he was again evaluated at the Community Counseling Service. He was then diagnosed with schizoaffective disorder, polysubstance abuse, and antisocial personality traits. PSR, ¶ 110.

In 2004, Jackson was incarcerated in the custody of the BOP. At that time, he was again evaluated. He was diagnosed with schizophrenia, bipolar disorder, and depression. PSR, ¶ 111. Following his release, he reported

that he received counseling at the Community Counseling Service. While in custody after his July 2007, arrest, Jackson was prescribed psychiatric medicines for depression. PSR, ¶ 112.

Attorney Quivey sought a downward departure for Jackson based on Jackson's mental condition. PSR, Addendum, at 46. Defendant Jackson's Commentary on Sentencing Factors (Case No. 05-30067 d/e 19) (Jackson Commentary), at 2. Attorney Quivey also submitted documentation demonstrating that the Social Security Administration (SSA) determined that Jackson was disabled due to his mental illness. Jackson Commentary, attached SSA Approval for Disability Benefits. The PSR stated that no grounds existed for a departure. Attorney Quivey objected to this statement. Quivey argued that Jackson should receive a downward departure due to his mental condition. PSR, Addendum, at 46; Sentencing Opinion, at 3.

On September 25, 2006, the Court conducted Jackson's sentencing hearing. The Court denied Jackson's request for a downward departure based on his mental health. Sentencing Opinion, at 3. The Court adopted the findings of the PSR. Id., at 4. The PSR determined that Jackson was a career offender and his base offense level was 34. Jackson received a three

point reduction in the offense level for acceptance of responsibility. His final offense level was 31. His criminal history level category was VI. The resulting Guideline sentencing range was 188 to 235 months. PSR, ¶ 138. The Government made a motion for a downward departure based on substantial assistance, which the Court allowed. The Court departed below the Guideline range and sentenced Jackson to 150 months. Sentencing Opinion, at 4.

The Court informed Jackson of his appeal rights at the end of the hearing. Sentencing Opinion, at 5. Jackson states in his Affidavit that Quivey never discussed the possibility of appealing. He states that if Quivey would have discussed the possibility of an appeal, he would have directed Quivey to file an appeal. Jackson Affidavit, ¶ 4.

## ANALYSIS

At this stage of the proceeding, this Court must determine whether Jackson is entitled to an evidentiary hearing on his claims of ineffective assistance. § 2255 Rule 8(a). Jackson must submit detailed and specific evidence which shows that he has actual proof of the allegations, rather than mere unsupported assertions, before he is entitled to an evidentiary hearing. Galbraith v. United States, 313 F.3d 1001, 1009 (7th Cir. 2002). To

7

establish ineffective assistance of counsel, Jackson must show: (1) the counsel's performance fell below an objective standard of reasonableness; and (2) the counsel's deficient performance prejudiced him resulting in an unreliable or fundamentally unfair outcome of the proceeding. Strickland v. Washington, 466 U.S. 668, 687-88 (1984). Jackson has failed to present any evidence that would establish any of his ineffective assistance claims.

Jackson first argues that attorney Quivey provided ineffective assistance in advising him to plead guilty. Jackson states in his Petition that he was "hoodwinked" into pleading guilty. Petition, at 5. Jackson provides no evidence on this point. The Affidavits submitted address communications with attorney Quivey after the plea and before the sentencing hearing. Jackson Affidavit; Kimberly Jackson Affidavit. Jackson is not entitled to an evidentiary hearing on this point.

Jackson also argues that Quivey was ineffective because Jackson received no benefit from pleading guilty. Jackson again presents no evidence to support this claim. Jackson, thus, is not entitled to a hearing on this point. The Court also notes that Jackson clearly received a benefit. By pleading guilty, Jackson received a three-point reduction in his offense level. That reduced his offense level from 34 to 31. PSR, ¶¶ 27-29; Sentencing

Opinion, at 4. That reduction resulted in a seventy-four month reduction in his Guideline sentencing range, from 262-327 months down to 188-235 months. U.S.S.G. Ch. 5, Pt. A, Sentencing Table. Furthermore, by pleading guilty, Jackson received the opportunity to cooperate with authorities. As a result of his cooperation, his sentence was ultimately reduced to 150 months. Sentencing Opinion, at 4. Thus, by following attorney Quivey's advice and pleading guilty, Jackson was able to reduce his sentence by more than nine years, from a minimum of 262 months to 150 months. He clearly received a benefit from attorney Quivey's efforts.

Jackson also claims that attorney Quivey was ineffective because he did not present the Court with all of the relevant medical information and the SSA documents to support a sentence reduction based on mental illness. The record, however, shows that Jackson is incorrect. The PSR demonstrates that attorney Quivey provided all of the relevant medical records concerning Jackson's history of mental health treatment to the Probation Office. The information was summarized for the Court in the PSR. Attorney Quivey also submitted to the Court the SSA documentation that Jackson was disabled. Attorney Quivey also argued for a downward departure due to his mental condition. Attorney Quivey, thus, met the

9

objective standard of reasonableness in his representation of Jackson on this issue.

Last, Jackson claims that attorney Quivey was ineffective because he did not discuss with Jackson the possibility of appealing his conviction. The Government argues that this issue is barred by the statute of limitations. The Court agrees. Jackson raised this issue in his Amended Petition, but not in his original Petition. The Amended Petition was filed on June 17, 2008, more than a year after Jackson's conviction became final in September 2006. Section 2255 states that a petition must be filed within one year of the latest of:

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United State is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255 ¶ f.  The Amended Petition does not relate back to the original filing date unless the amended claim has more in common with the timely filed claim than the fact that they arose out of the same trial and sentencing proceeding.  Rodriguez v. United States, 286 F.3d 972, 981 (7th Cir. 2002).

Jackson's claim that attorney Quivey did not discuss filing an appeal does not relate back to the original filing.  The original Petition did not assert any issues regarding appeals.  Thus, the claim is barred unless Jackson can show that the starting time for the one-year statute is based on subparagraphs (2), (3), or (4) of § 2255 ¶ f, quoted above.  Jackson makes no showing that any of these three subparagraphs apply.  Jackson does not identify any impediment to filing this Motion created by the Government; he does not assert a newly recognized right; and he does not claim that the facts supporting the claim were not available to him until some date after his judgment became final.  With respect to the last point, the Court informed Jackson of his appeal rights at the sentencing hearing.  Sentencing Opinion, at 5.  He, thus, knew that he had a right to appeal at that time.  Jackson's claim regarding attorney Quivey's failure to discuss the possibility of an appeal is barred by the statute of limitations.

11

THEREFORE, Petitioner Michael Jackson's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (d/e 1), and his First Amended Motion to Vacate Pursuant to 28 U.S.C. § 2255 (d/e 9) are DENIED.  The Clerk is directed to file in this case the following documents from Jackson's criminal proceeding, Case No. 05-30067: Competency Report and cover letter (criminal case d/e 12) (to be filed under seal); PSR (criminal case d/e 26) (to be filed under seal); and Defendant Jackson's Commentary on Sentencing Factors with attachments (criminal case d/e 19); Opinion entered September 27, 2006 (criminal case d/e 23).  All pending motions are denied as moot.  This case is closed.

IT IS THEREFORE SO ORDERED.

ENTER:   March 24, 2009

    FOR THE COURT:

                                            s/ Jeanne E. Scott
                                            JEANNE E. SCOTT
                                            UNITED STATES DISTRICT JUDGE